IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:21-CV-00379-D

| | |
|---|---|
| Charles W. Mitchell, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Graincomm, II, LLC; Global Signal Acquisitions LLC; Sprintcom, Inc.; Cellco Partnership, d/b/a/ Verizon Wireless; <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANT GLOBAL SIGNAL ACQUISITIONS LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (D.E. 93, 99)** |

Pursuant to Local Rule 7.1(e)-(f), Defendant Global Signal Acquisitions LLC ("GSA"), files this Memorandum in Support of its Motion to Enforce the Settlement Agreement, which was made by and between Plaintiff Charles W. Mitchell, Plaintiff Robert H. Mitchell, GSA, and Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, the "Parties"). For purposes of efficiency and judicial economy, this Memorandum also serves as GSA's Response in Opposition to Plaintiff Charles Mitchell's March 25, 2025 "Motion for Reconsideration," which seeks to circumvent the parties' negotiated and fully executed settlement agreement. (D.E. 93.) This Memorandum further addresses the arguments in Charles Mitchell's recent "Memorandum in Support," which was belatedly filed over a month after his motion. (*See* D.E. 93, 99; *see also* Local Rule 7.1(e) (requiring contemporaneous filing of Memorandum).) For the reasons stated below, this Court should enforce the Parties' settlement agreement and deny Charles Mitchell's Motion for Reconsideration.

## INTRODUCTION

After substantial negotiations and good faith settlement efforts between the Parties, and during a mediation conducted by former U.S. Magistrate Judge Carl Horn, III ("Judge Horn"), the Parties memorialized the terms of their settlement agreement resolving all claims in a Memorandum of Understanding ("MOU" or "Settlement Agreement"), which Charles Mitchell admits he signed but now seeks to evade. As stated in the Settlement Agreement and confirmed by mediator Judge Horn, "all claims were settled" on March 2, 2023. (D.E. 88.) Other than Charles Mitchell, all other Parties agree that this matter has been resolved and settled through the MOU, and Plaintiff Robert H. Mitchell and Defendant Verizon have expressly consented to this motion to enforce the MOU.

Yet Charles Mitchell—who apparently has buyer's remorse and wants to negotiate a higher settlement payment after the fact—now attempts to use unfounded personal attacks and references to the length of mediation, his age, and his spouse to avoid enforcement of the signed, binding Settlement Agreement. (D.E. 93.) Charles Mitchell's assertions are meritless, and they do not provide a basis for avoiding the terms of the Parties' Settlement Agreement, which became enforceable when the Parties signed it on March 2, 2023. (D.E. 93-1 ¶ 10.) This Court, pursuant to its inherent authority, principles of contract, and the plain language of the Settlement Agreement, should grant this Motion to Enforce the Settlement Agreement, deny Charles Michell's "Motion for Reconsideration" (D.E. 93), and dismiss this action in its entirety with prejudice.

## STATEMENT OF THE CASE

**A. The Mitchell Brothers, GSA, and Verizon Were the Only Remaining Parties During the Relevant Timeframe.**

Plaintiffs Charles Mitchell and Robert Mitchell (the "Mitchell Brothers") filed a Verified Complaint in state court on or about August 16, 2021, asserting claims against GSA, Verizon, and others for (1) trespass; (2) declaratory judgment to quiet title; and/or (3) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("UDTPA"). (D.E. 1, 1-1.) The case was subsequently removed to this Court on September 17, 2021. (*Id.*)

On June 17, 2022, the Mitchell Brothers filed an Amended Complaint, asserting claims against GSA and Verizon and former Defendants Sprintcom, Inc. and Graincomm II, LLC ("Graincomm"). (Am. Compl., D.E. 63.) This amended pleading also added, for the first time, the Mitchell Brothers' spouses Lisa Mitchell and Linda Mitchell as Plaintiffs. (*Id.*) However, Lisa and Linda Mitchell did not join in the Mitchell Brothers' causes of action against GSA or Verizon. (*Compare id.* ¶¶ 61-77 (specifically distinguishing claims made by "The Mitchell Brothers") *with id.* ¶¶ 78-91 (separating newly asserted claims by all "Plaintiffs").) Instead, the additional claims in the Amended Complaint were directed to GrainComm alone, including the sole claim asserted by Lisa and Linda Mitchell. (*Id.* ¶¶ 78-91 (Fifth Claim for Relief).) Plaintiffs' claims against Graincomm were dismissed with prejudice, pursuant to an apparent settlement between those parties. (D.E. 89.) Plaintiffs' claims against SprintCom, Inc. were also dismissed with prejudice. (D.E. 82.)

GSA answered the Amended Complaint and also filed a Motion for Partial Judgment on the Pleadings, seeking dismissal of the Mitchell Brothers' UDTPA claim and request for punitive damages. (D.E. 75-76.) The Court granted GSA's Motion for Partial Judgment on the Pleadings on December 9, 2022. (D.E. 84.)

Thus, at the time of the March 2023 mediation and Settlement Agreement at issue in this Motion, the only pending claims in this action were the Mitchell Brothers' trespass and declaratory judgment claims against GSA and Verizon.

**B.  All Remaining Claims Were Settled on March 2, 2023.**

On March 2, 2023, all of the Parties remaining in this action participated in a mediation with former U.S. Magistrate Judge Carl Horn, III as mediator. (D.E. 88, 91.) As reflected in the Report of Judge Horn, after a mediation with all remaining Parties and their counsel, "all claims were settled." (D.E. 88.) Judge Horn commended the parties for "their diligent and open-minded efforts to find common ground and resolve what could have been a long and contentious dispute[,]" and he also expressly commended the Parties' counsel: "They are all fine lawyers of whom our profession can be proud." (D.E. 88.)

Indeed, Charles Mitchell admits that the Parties' memorialized their settlement agreement in the MOU, which was signed by each of the Mitchell Brothers, GSA, and Verizon. (D.E. 93-1.) The Mitchell Brothers and their counsel actively negotiated the terms of the MOU, which included a settlement payment, releases, the removal of certain cables/lines at issue, the expansion of the utility easement area as it pertains to GSA, and the withdrawal of a 2008 Affidavit referenced in the Amended Complaint. (*See* D.E. 93-1, ¶¶ 1-6.)

The plain terms of the MOU note that the "agreement will be enforceable upon counsel's confirmation of these terms and signatures below[.]" (D.E. 93-1, ¶¶ 10-12.) The Mitchell Brothers were also required to file a dismissal with prejudice regarding all claims "within seven (7) days" of the MOU's "execution[.]" (D.E. 93-1 ¶ 8.) To date, the Mitchell Brothers have not filed a dismissal with prejudice as to GSA or Verizon.

### C. GSA Performs Survey and Drafts Amended Easement Documents Pursuant to the Parties' Settlement Agreement.

To facilitate the terms of the settlement—which included an expansion of GSA's easement "in the area of the existing Lines"—a survey had to be conducted to accurately reflect the location of such lines and so that the amended Utility Easement would accurately encompass the area where the existing Lines were located. (D.E. 93-1, ¶¶ 4-5.) The survey was conducted, and consistent with the MOU's requirements (MOU, D.E. 93-1, ¶ 12), counsel for GSA circulated a draft Confidential Settlement Agreement with more fleshed-out terms (the "Formalized Agreement") to the Mitchell Brothers and Verizon (through their counsel). (*See* **Exhibit 1**, Email Circulating Settlement Documents.) Consistent with the MOU's requirements, GSA also included as exhibits to the Formalized Agreement the amended Utility Easement and a proposed Withdrawal of the 2008 Affidavit, both of which were to be recorded in the public record as part of the parties' settlement. (*See* **Exhibit 2**, Proposed Utility Easement; **Exhibit 3**, Withdrawal of 2008 Affidavit.)

### D. Plaintiff Charles Mitchell Attempts to Renege on the Settlement.

After the MOU was signed and the Formalized Agreement was circulated, counsel of record for Plaintiffs, Jim Barnes (of Oxendine Barnes & Associates PLLC), notified counsel for GSA and Verizon that he would no longer be representing Charles Mitchell but would continue representing his brother, Robert Howard Mitchell. (**Exhibit 4**, Jim Barnes Email, May 11, 2023.) Charles Mitchell then emailed undersigned counsel directly, purporting to challenge the validity of the Settlement Agreement. (**Exhibit 5**, Charles Mitchell Email, May 15, 2023.) No Notice of Substitution or Withdrawal of Counsel was filed with the Court, however, and undersigned counsel was subsequently told that Charles Mitchell was represented by attorney Allen Swaim. Thus, undersigned counsel reached out to Mr. Swaim's law firm repeatedly about this case, including sending the Formalized Agreement and exhibits on multiple occasions. (**Exhibit 6**, Jim Barnes

5

Emails, Aug. 2024; **Exhibit 7**, Emails to Mr. Swaim's Law Firm, Aug. and Sep. 2024.) GSA's counsel received no response, and the Mitchell Brothers did not execute the Formalized Agreement.

Thereafter, Charles Mitchell directly contacted undersigned counsel again, noting that he was proceeding *pro se* and again disputing the settlement. (*See* **Exhibit 8**, Charles Mitchell Email, Jan. 8, 2025.) GSA sent a formal letter responding to Charles Mitchell, enclosing the Formalized Agreement and asked for his execution of same. (*See* D.E. 93-2.) On March 31, 2025, Charles Mitchell instead filed a letter with the Court attempting to dispute the parties' Settlement Agreement, which the Court titled as a Motion for Reconsideration, enclosing as exhibits the MOU Charles Mitchell signed and the letter from GSA's counsel. (D.E. 93, 93-1 (MOU), 93-2 (GSA Letter, exhibits omitted).) Today, on May 5, 2025—over a month after the Motion for Reconsideration was filed— another law firm entered an appearance on behalf of Charles Mitchell and filed a purported Memorandum in Support of his motion. (D.E. 98-99.)

GSA now contemporaneously files its Motion to Enforce the Settlement Agreement and this Memorandum in Support of that Motion and in Opposition to Charles Mitchell's "Motion for Reconsideration." (D.E. 93).

### ARGUMENT

**I. THIS COURT HAS INHERENT POWER TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT, WHICH IS A BINDING AND ENFORCEABLE CONTRACT.**

Federal courts have the inherent power to summarily enforce settlement agreements made between the parties involved in litigation before them. *Young v. Federal Deposit Insurance Corp.*, 103 F.3d 1180, 1194 (4th Cir. 1997). "As a matter of policy, settlement benefits parties and conserves judicial resources, and is therefore favored by the [United States Court of Appeals for the] Fourth Circuit." *Clayton v. Ameriquest Mortg. Co.*, No. 1:02-CV-415, 2004 WL 734978, at *2

6

(M.D.N.C. Apr. 5, 2004), *aff'd*, 117 F. App'x 301 (4th Cir. 2004); *see also*, *e.g.*, *Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (explaining that, to benefit parties and conserve judicial resources, "[c]ourts should foster settlement"). Importantly, "when a settlement is reached in a case pending before it, a trial court has the authority to enforce the terms of that settlement." *Clayton*, 2004 WL 734978, at *2; *see also Columbus–America Discovery Group v. Atlantic Mutual Insurance Co.*, 203 F.3d 291, 299 (4th Cir. 2000), *cert. denied*, 531 U.S. 918 (2000); *Fairfax Countywide Citizens Ass'n v. County of Fairfax, Va.*, 571 F.2d 1299, 1304 (4th Cir. 1978), *cert. denied*, 439 U.S. 1047 (1978).

If it is clear that an agreement exists between parties and its terms and conditions can be determined—as is the case here—the court may enforce it summarily, and without the need for a hearing. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541-542 (4th Cir. 2002); *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988) (noting that "[t]rial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing"). A party having misgivings or "second thoughts" about the wisdom of a valid agreement or its results does not render the agreement unenforceable. *Hensley*, 277 F.3d at 540; *see also Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997) ("[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement."); *see also Harmon v. Frangis*, 2009 WL 1383378, 676 S.E.2d 670 (table) (N.C. Ct. App. 2009) (finding claim that a party "changed her mind" insufficient to render agreement invalid); *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 534 S.E.2d 653, 655 (2000) (enforcing agreement to settle case); *accord Ellerbe v. Saunders*, 137 F. Supp. 3d 812, 816 (M.D.N.C. 2015) (enforcing agreement where plaintiff "developed second thoughts about his agreement and began to conjure up additional terms" after an agreement was reached).

7

"[T]o grant a motion to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." S*mith-Phifer v. City of Charlotte*, 118 F.4th 598, 610 (4th Cir. 2024) (internal quotation marks omitted). "When considering a motion to enforce a settlement agreement, the district court applies standard contract principles." *Topiwala v. Wessell*, 509 Fed. Appx. 184, 186 (4th Cir. 2013) (citing *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 380 (4th Cir. 2004)). Under North Carolina law, an enforceable agreement requires that the parties have a meeting of the minds on its material terms. *Elliott v. Daniel*, 153 N.C. App. 200, 569 S.E.2d 33 (2002). All of these factors are present in this case.

## II. THE PARTIES SETTLED THIS DISPUTE MATTER THROUGH THE EXECUTED SETTLEMENT AGREEMENT.

Where, as here, the parties have reduced an agreement to writing that by its plain terms settles the underlying lawsuit, "the record supports summary enforcement of the Settlement Agreement." *Bryant v. Eastwood Constr., LLC*, No. 1:23-CV-637, 2024 WL 4332553, at *8 (M.D.N.C. Sept. 27, 2024), *appeal dismissed*, No. 24-1960, 2024 WL 5500593 (4th Cir. Nov. 13, 2024). In such a case, "Clearly, a settlement d[oes] exist." *Petty*, 849 F.2d at 133.

Courts have applied the reasoning set forth above and enforced other memoranda of understanding between parties, and this Court should do the same here. *See, e.g.*, *Dean v. Jones*, No. 5:16-CV-3109-FL, 2022 WL 7454945, at *2-3 (E.D.N.C. Oct. 13, 2022) (enforcing settlement agreement where the parties reduced their agreement to writing in a "memorandum of understanding," noting: "The memorandum of understanding will be entered into the record as a consent judgment."); *USA Trouser, S.A. de C.V. v. Andrews*, No. 1:11-CV-00244-MR-DLH, 2016 U.S. Dist. LEXIS 3038, at *3-4 (W.D.N.C. Jan. 11, 2016) ("[T]he Court concludes as a matter of law that the MOU constitutes an enforceable settlement agreement between the parties to this

8

action. Accordingly, the Court by its inherent powers can enter an Order and Judgment to enforce that agreement."); *Bell v. Dep't of Homeland Sec.*, No. 3:16-CV-00732-RJC-DSC, 2019 WL 5700778, at *1 (W.D.N.C. Nov. 4, 2019), *report and recommendation adopted*, No. 3:16-CV-00732-RJC-DSC, 2019 WL 7374676 (W.D.N.C. Dec. 31, 2019) ("The material terms of the agreement are readily discernable on the face of the Memorandum of Settlement.").

Here, Charles Mitchell admits that the Mitchell Brothers "did sign an MOU," and he attached the MOU to his Motion for Reconsideration. (D.E. 93 at 1; D.E. 93-1.) Under its plain terms, the MOU is a binding settlement agreement. In its introduction, it states that the Parties "have agreed to settle all claims in the above-captioned action . . . ." (D.E. 93-1 at 1 (emphasis added).) It does not contain preconditions to settlement, but instead speaks in present tense and notes: "This will be a global, broad-form release of all claims related to the alleged trespass, including all matters alleged in the Amended Complaint." (*Id.* ¶ 2.) It provides that "Plaintiffs will file a dismissal with prejudice" within seven days "of the execution of this agreement." (*Id.* ¶ 9 (emphasis added).) Notably, it specifically provides: "This agreement will be enforceable upon counsel's confirmation of these terms and signatures below[.]" (*Id.* ¶ 10 (emphasis added).) Recognizing these terms, as he admits, Charles Mitchell signed the MOU, which is enforceable as a matter of law. (D.E. 93 at 1.) Thus, the Court should grant GSA's Motion and enforce the binding MOU.

### III. NONE OF CHARLES MITCHELL'S ATTEMPTS TO EVADE THE BINDING SETTLEMENT AGREEMENT PASS MUSTER.

Seeking to circumvent the clear and enforceable terms of the Parties' Settlement Agreement, Charles Mitchell makes various assertions about the perceived merits of the case, none of which have a bearing on whether the Parties fully settled their claims on March 2, 2023. His second thoughts and opinions about the value of his case do not offer justification for the

Court to tear up an agreement Charles Mitchell himself negotiated, reviewed, and signed. In accordance with the Court's policy of fostering compromise between parties and well-established contract principles, the plain terms of the MOU should be enforced.

***References to the Length of Mediation***: In this Motion for Reconsideration (D.E. 93), Charles Mitchell—who was represented by counsel during the mediation—attempts to avoid the binding settlement by arguing that the mediation lasted over ten hours. (D.E. 93 at 1.) Settlement negotiations routinely take a number of hours, and the length of a mediation is not a basis to overturn a binding settlement. For example, in *Bell v. Department of Homeland Security*, the plaintiff attempted to avoid settlement by argument that "the mediation lasted twelve hours and while she signed the agreement, she believed she had no other choice at the time." *Bell*, 2019 WL 5700778, at *1. The court rejected that argument and enforced the parties' "Memorandum of Settlement," noting:

> The material terms of the agreement are readily discernable on the face of the Memorandum of Settlement. Plaintiff agreed to a full and final release of all claims against Defendant in return for Defendant paying Plaintiff and her counsel $199,000. The agreement was signed by the parties and their counsel. The Court concludes that the agreement is complete as it disposes of the case in its entirety.

*Id.* at *2. Charles Mitchell's reference to a ten-hour mediation is not a basis to unwind a binding Settlement Agreement.

Charles Mitchell also refers to his age of 71 at the time of settlement negotiations, but he offers nothing to the Court to support the theory that this renders the Settlement Agreement unenforceable. To the contrary, during the mediation and afterward, Charles Mitchell has considered himself capable of understanding and negotiating a settlement, contending in emails to undersigned counsel after mediation that settlement (which had already occurred) could "only be attained through direct negotiation with Charles Mitchell," undermining his Motion's implication

10

that he was somehow incompetent or incapable to agree to resolve his claims at mediation. (*See* **Exhibit 9**, Charles Mitchell Email, May 15, 2023.) The Court should not entertain Charles Mitchell's attempt to renegotiate the Settlement Agreement on these grounds, especially since he personally wants to be in charge of such renegotiation, now without the benefit of counsel, which he had when executing the Settlement Agreement. *See generally Johnson v. Low*, 2024 WL 4948429, 909 S.E.2d 393 (N.C. Ct. App. 2024) (rejecting attempt to avoid settlement for incapacity where plaintiff did not offer evidence that he "was mentally incapacitated at the time of the mediation, nor does the evidence demonstrate any knowledge from opposing counsel of their awareness of any physical incapacity at the time of the mediation").

***References to Plaintiff's Spouse Lisa Mitchell***: Charles Mitchell—who never objected to the lack of Lisa or Linda Mitchell's attendance at the mediation and requested that all negotiations go through him alone—also references the fact that the Mitchell Brothers's spouses did not attend the mediation. (D.E. 93 at 3; D.E. 99 at 5-6.) But Linda Mitchell and Lisa Mitchell never asserted any claims against GSA or Verizon, and the only claims Lisa or Linda Mitchell ever asserted were dismissed with prejudice prior to the mediation and Settlement Agreement at issue. (*See* Am. Compl., D.E. 63, ¶¶ 78-91; D.E. 89 (Stipulation of Dismissal).) Further, as reflected in the Amended Compliant and the Deed attached to Plaintiffs' Verified Complaint, the Mitchell Brothers also owned the relevant property and granted the easements at issue in the dispute. (*See* Compl., D.E. 1-1, ¶¶ 2, 22.) Therefore, there is no legal basis for Charles Mitchell's claim of unenforceability based on the non-participation of his or his brother's spouse.

Even if Lisa and Linda Mitchell had been parties to this action at the time of mediation (which is not the case), the Mitchell Brothers had apparent authority to settle the claims on behalf of their wives, including by filing claims against GSA and Verizon alone, by appearing at the court-

ordered mediation without their spouses, and by signing the MOU and representing to the Parties and the mediator that they had authority to release all of the remaining claims in this action. *See Johnson v. State Farm Mut. Auto. Ins. Co.*, No. 3:19-CV-451-RJC, 2020 WL 7186760, (W.D.N.C. Dec. 7, 2020) (upholding settlement where there was "apparent authority to agree to settlement offer"); *Sheppard v. Coleman*, No. 4:19-CV-86-D, 2021 WL 6332356 (E.D.N.C. Nov. 10, 2021) (person with "apparent authority" can settle case "even if doing so exceeded . . . actual authority"); *see also Harmon*, 2009 WL 1383378 at *3 ("The other piece of evidence to which plaintiff points —her affidavit stating that she never extended the authority to settle the case to [her attorneys]— also does not suffice to overcome this presumption…. Her argument based on her retaining another attorney after the settlement agreement was entered into is simply a logical nullity.") (citing *Royal v. Hartle*, 145 N.C. App. 181, 184, 551 S .E.2d 168, 171 (2001) (affirming trial court's finding that presumption not overcome where only evidence before court were affidavits of clients)).

***References to the Formalized Written Agreement***: In Charles Mitchell's recent belated Memorandum (D.E. 99), he further argues that the MOU is unenforceable because it states: "The Parties will execute a formal settlement agreement consistent with the above-mentioned terms." (MOU ¶ 12.) Nothing in this language of the MOU makes enforceability contingent upon a formalized agreement, nor were formalized settlement documents a condition precedent. Instead, the MOU became "enforceable" when the Mitchell Brothers signed it. (*Id.* ¶ 10.) Charles Mitchell also attaches draft formalized settlement documents—including a draft where it appears he would propose to remove obvious confidentiality requirements (*see* MOU ¶ 11)—in an attempt to avoid enforcement. (*See* D.E. 99-3.) None of those drafts change the fact that the parties entered into a binding agreement on March 2, 2023. The MOU contains all of the material terms necessary for a binding agreement and indicates that there was a meeting of the minds, including, *inter alia*, a

12

settlement payment; release of liability; reference to the relocation of Verizon's line at issue in this action; reference to GSA's cables/lines and a grant of an easement in regard to the lines at issue in this action; reference to the 2008 Affidavit; and reference to the filing of a dismissal with prejudice. (MOU *passim*.)

Parties who fully settle claims routinely indicate that those binding agreements will be reflected in a detailed writing—however, a reference to formalized settlement documents has no bearing on enforceability, even when the parties cannot later agree on the exact terms of a formalized release. *See, e.g., Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 494-95, 606 S.E.2d 173, 178 (2004) (rejecting plaintiff's argument that "the execution of the settlement documents was a condition precedent to the formation of a contract" and enforcing settlement even where plaintiff "objected to a provision in the proposed release and suggested alternatives to the release language"); *Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (holding that parties reached an agreement even where the "Memorandum of Settlement" stated that the "claimant shall execute clincher setting out above terms and other standard language"); *see generally Clayton*, 2004 WL 734978, at *3 ("[T]his Court has the authority to enforce the terms of that oral agreement without reference to any later attempted efforts at reducing the agreement to writing."). The case relied upon by Charles Mitchell—*Mitchell v. Boswell*, 274 N.C. App 174, 851 S.E. 2d 646 (2020) (hereinafter "*Boswell*")—is inapposite. In *Boswell*, the language of the memorandum expressly indicated that it was not intended to serve as a binding agreement. The memorandum clearly stated: "This is only a memorandum and a settlement agreement with more details will be drafted." *See Boswell*, 274 N.C. App. at 176, 851 S.E.2d at 649. Also, the memorandum was not signed by all of the parties, and not all of the parties were present during the mediation, which occurred over the phone. *Id.* Because the relevant statute of frauds required

13

signature of the parties, "[w]hether Mitchell was entitled to enforcement of the memorandum of settlement as a matter of law turn[ed] on whether Boswell's failure to sign the memorandum of settlement made it unenforceable against him under the statute of frauds." *Id.* at 178, 851 S.E.2d at 650. Here, Charles Mitchell and his attorney were present at the mediation, the MOU was signed by Charles Mitchell and the other Remaining Parties, and the language of the MOU indicates that it became enforceable upon signature of the parties. Thus, *Boswell* has no application here.

**References to Supposed "Unethical" Conduct**: In an unfortunate attempt to unwind the Settlement Agreement, Charles Mitchell baselessly refers to purported "unethical[]" conduct or "manipulat[ion]" by the Parties' counsel. (D.E. 93 at 1.) He has not, and cannot, offer any evidence or support for those contentions. To the contrary, the mediator Judge Horn—who is a well-respected former U.S. Magistrate Judge—wrote as follows to the District Judge presiding over this case:

> I am pleased to report that we mediated this case yesterday and that all claims were settled . . .
>
> **Special thanks and commendation are due counsel (Jim Barnes for the Plaintiffs, and James Derrick, Brian Castro, and Erik Tomberg for the remaining Defendants) for their diligent and open-minded efforts to find common ground and resolve what could have been a long and contentious dispute. They are all fine lawyers of whom our profession can be proud.**

(D.E. 88 (emphasis added).) Consistent with Judge Horn's Report, the mediation consisted of substantial—but cordial and professional—negotiations amongst the Parties, including active participation and input from Charles Mitchell throughout the day. (*See* 93-2.) Indeed, the party representatives and counsel shared stories and pleasantries and shook hands, both before the mediation's opening session and again after the parties signed the binding MOU. Charles Mitchell's vague references to supposed improper conduct are completely unfounded and nothing

more than a desperate attempt to back out of a binding agreement after signing it and then having "second thoughts," which is not enough to avoid enforcement. *See Hensley*, 277 F.3d at 540; *Young*, 103 F.3d at 1195.

***References to Lack of Payment/Performance***: To the extent Charles Mitchell seeks to rely on the fact that payment has not been made or performance under the MOU has not been effectuated, this Court can consider that, as of May of 2023—when the Remaining Parties were in the midst of formalizing terms and moving forward with having a survey conducted to confirm where the lines/cables at issue were located—GSA was notified that Charles Mitchell, one of the property owners, was reneging on the agreement. (*See* **Exhibit 4**, Jim Barnes Email, May 11, 2023; **Exhibit 5**, Charles Mitchell Email, May 15, 2023.) Under these circumstances, where Charles Mitchell has indicated that he will not comply with the MOU, Court enforcement is necessary, and it would have been illogical for GSA to send a substantial settlement check to Charles Mitchell and otherwise effectuate the MOU without Court intervention. The Court should not allow Charles Mitchell to benefit from reneging on the MOU by arguing that performance did not occur after he upended it.

## CONCLUSION

For the foregoing reasons, GSA requests that the Court grant this Motion to Enforce Settlement Agreement and deny Plaintiff Charles Mitchell's Motion for Reconsideration. (D.E. 93). Specifically, the Court should enter an order declaring that the MOU is a full and final settlement between the parties, that the amended Utility Easement and Withdrawal of 2008 Affidavit shall be filed in the public record, and that this matter shall be dismissed with prejudice.

This is the 5th day of May, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *Brian F. Castro*
Brian F. Castro
N.C. State Bar No. 53412
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8135
Facsimile: (919) 755-6163
Email: Brian.Castro@wbd-us.com

James S. Derrick
N.C. State Bar No. 39632
One Wells Fargo Center, Suite 3500
301 S. College Street
Charlotte, NC 28202
Tel: (704) 331-4900
Fax: (704) 331-7819
Email: James.Derrick@wbd-us.com

*Attorneys for Defendant Global Signal Acquisitions LLC*

16

## CERTIFICATE OF WORD COUNT

      I hereby certify, this the 5th day of May, 2025, that the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT GLOBAL SIGNAL ACQUISITIONS LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (D.E. 93, 99)** contains 4,556 words in total, exclusive of the case caption, signature lines, exhibits and required certificates, which is in compliance with the Court's word count requirements.

By: /s/ *Brian F. Castro*
Brian F. Castro
N.C. State Bar No. 53412
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8135
Facsimile: (919) 755-6163
Email: Brian.Castro@wbd-us.com

*Attorney for Defendant Global Signal Acquisitions LLC*

17

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 5th day of May, 2025, the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT GLOBAL SIGNAL ACQUISITIONS LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION (D.E. 93, 99)** was filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and serve counsel for all parties who have entered an appearance in this Court. In addition, the foregoing was served by United States mail to:

Ryan D. Oxendine (NCSB No. 27595)
6500 Creedmoor Rd., Suite 100
Raleigh, NC 27613
(919) 848-4333 Telephone
(919) 848-4707 Facsimile
Email: ryan@oxendinebarnes.com

*Attorney for Plaintiff Robert H. Mitchell*

Chad E. Axford
5171 Glenwood Ave., Ste. 206
Raleigh, NC 27612
Telephone: (919) 322-0815
N.C. Bar# 26059
chad@axfordlaw.com

*Attorney for Plaintiff Charles Mitchell*

Erik J. Tomberg (NC Bar # 56867)
150 Fayetteville St., Suite 300
Raleigh, NC 27601
Telephone: (919) 274-5664
Fax: (984) 268-2120
erik.tomberg@wilsonelser.com

*Attorney for Cellco Partnership d/b/a Verizon Wireless*

                        By: /s/ *Brian F. Castro*
                        Brian F. Castro

*Attorney for Defendant Global Signal Acquisitions LLC*