IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-379-D

| | |
|---|---|
| CHARLES W. MITCHELL, and ROBERT H. MITCHELL, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) **ORDER** |
| GRAINCOMM II, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

On March 31, 2025, Charles Mitchell and Robert Mitchell (the "Mitchell Brothers" or "plaintiffs"), proceeding pro se, filed a "motion for reconsideration" and asked the court not to enforce the settlement agreement that they reached with Global Signal Acquisitions LLC ("GSA") and Cellco Partnership d/b/a/ Verizon Wireless ("Verizon") (together, "defendants") [D.E. 93]. On May 5, 2025, plaintiffs, now through counsel, filed a memorandum in support of their motion for reconsideration [D.E. 99]. That same day, defendants moved to enforce the settlement agreement and responded in opposition to plaintiffs' motion for reconsideration [D.E. 100] and filed a memorandum in support [D.E. 101].[1] On May 6, 2025, defendants filed a motion to strike plaintiffs' memorandum in support [D.E. 103] and filed a memorandum in support [D.E. 104].[2] On May 19, 2025, plaintiffs replied to defendants' motion to enforce the settlement agreement [D.E. 107]. As explained below, the court denies plaintiffs' motion for reconsideration, grants

---

[1] GSA filed the motion to enforce the settlement agreement, which Verizon joins. See [D.E. 114].

[2] GSA filed the motion to strike, which Verizon joins. See [D.E. 105].

defendants' motion to enforce the settlement agreement, and denies as moot defendants' motion to strike.

I.

On August 16, 2021, the Mitchell Brothers filed a verified complaint in Wake County Superior Court against GSA, Verizon, GrainComm II, LLC ("GrainComm"), GSA, Sprintcom, Inc. ("Sprintcom"), Bell Atlantic Mobile Systems LLC, GTE Wireless Inc., PCS Nucleus, L.P., and JV PartnerCo, LLC. See [D.E. 1-2]. On September 17, 2021, the state-court defendants removed the case to this court. See [D.E. 1].

On June 17, 2022, the Mitchell Brothers filed an amended complaint, asserting claims against GSA, Verizon, Sprintcom, and GrainComm. See [D.E. 63]. In the amended complaint, the Mitchell Brothers purported to add their respective spouses, Lisa Mitchell and Linda Mitchell, as plaintiffs in new claims against GrainComm. See id. Lisa Mitchell and Linda Mitchell did not join the claims against GSA or Verizon. Compare id. at ¶¶ 61–77, with id. at ¶¶ 78–91. On July 22, 2022, GSA answered the amended complaint and filed a motion for partial judgment on the pleadings. See [D.E. 75–76]. On December 6, 2022, plaintiffs voluntarily dismissed with prejudice their claims against Sprintcom. See [D.E. 82]. On December 9, 2022, the court granted GSA's motion for partial judgment on the pleadings and dismissed some of plaintiffs' claims against GSA. See [D.E. 84].

On March 2, 2023, the remaining parties in this case participated in mediation with former United States Magistrate Judge Carl Horn, III ("Horn"). See [D.E. 101] 4; cf. [D.E. 88]. On March 3, 2023, Horn called the court and reported that the parties had reached an agreement to settle the action. On March 6, 2023, Horn filed a report with the court concerning mediation in this case. See [D.E. 88]. In that report, Horn informed the court that parties had "settled" all claims in

2

mediation, and that the court should expect to "see the filing of a dismissal to those claims in the near future." Id. at 1. Horn also commended counsel for plaintiffs and defendants in this case "for their diligent and open-minded efforts to find common ground and resolve what could have been a long contentious dispute." Id. Indeed, Horn stated that plaintiffs' counsel and defendants' counsel "are all fine lawyers of whom our profession can be proud." Id. The parties do not dispute that they executed a Memorandum of Understanding ("MOU"), in which defendants agreed to pay plaintiffs $305,000 and plaintiffs agreed to voluntarily dismiss with prejudice their remaining claims. See [D.E. 93-1]; [D.E. 99] 2–3; [D.E. 99-1]; [D.E. 101] 9.

On March 10, 2023, consistent with the MOU, plaintiffs voluntarily dismissed with prejudice their claims against GrainComm, and GrainComm voluntarily dismissed with prejudice its counterclaims against plaintiffs. See [D.E. 89] 1.

After more than a year without an update from the parties, on August 6, 2024, the court ordered the parties to file a joint status report concerning the parties' progress in completing the final settlement agreement and filing a joint dismissal. See [D.E. 90]. On August 23, 2024, the parties filed a joint status report. See [D.E. 91]. In that joint status report, the parties confirmed that they "settled this matter in its entirety after an all-day meditation . . . on March 2, 2023," and that the Mitchell brothers had "signed and executed a Memorandum of Understanding . . . which memorialized that settlement." Id. at 1–2. On September 5, 2024, the court administratively closed the case pending further action by the parties. See [D.E. 92]. On March 31, 2025, plaintiffs filed their "motion for reconsideration." See [D.E. 93].

II.

"The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into." Hemstreet

3

v. Spiegel, Inc., 851 F.2d 348, 350 (Fed. Cir. 1988); Sheppard v. Coleman, No. 4:19-CV-86, 2021 WL 6332356, at *2 (E.D.N.C. Nov. 10, 2021) (unpublished); see Cent. Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993) ("[c]ourts should foster settlement in order to advantage the parties" and conserve scarce judicial resources). "[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." Hensley v. Alcon Lab'ys., Inc., 277 F.3d 535, 540 (4th Cir. 2002); Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988). The court's inherent authority applies whether the settlement agreement is written or oral. Hensley, 277 F.3d at 540; Alexander v. Indus. of the Blind, Inc., 901 F.2d 40, 41 (4th Cir. 1990). "A settlement agreement may be enforceable notwithstanding the fact that it is not yet consummated." Topiwala v. Wessell, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam) (unpublished); see Hensley, 277 F.3d at 542.

"When considering a motion to enforce a settlement agreement, the district court applies standard contract principles." Swift v. Frontier Airlines, Inc., 636 F. App'x 153, 154 (4th Cir. 2016) (per curiam) (unpublished); see Bradley v. Am. Household, Inc., 378 F.3d 373, 380 (4th Cir. 2004); Campbell v. Adkisson, Sherbert & Assocs., 546 F. App'x 146, 156 (4th Cir. 2013) (Agee, J., concurring) (unpublished) ("Under North Carolina law, the formation of a settlement agreement is considered according to the established rules of ordinary contract law." (footnote omitted)). A district court must determine whether the parties "reached a complete agreement," and if so, the court "must be able to determine its terms and conditions." Hensley, 277 F.3d at 540–41; see Swift, 636 F. App'x 154–55; Campbell, 546 F. App'x at 152; Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991). "In deciding whether a settlement agreement has been reached, the [c]ourt looks to the objectively manifested intentions of the parties." Moore, 936 F.2d at 162.

If the parties dispute the existence of an agreement or the agreement's terms, "the district court may not enforce [the] agreement summarily." Hensley, 277 F.3d at 541 (emphasis omitted). Rather, the court must resolve the disputes through a plenary evidentiary hearing. See id. Conversely, where the parties do not dispute the existence of an agreement or its terms and conditions, a district court has inherent authority to enforce the agreement "without a plenary hearing." Petty, 849 F.2d at 132; see United States v. Newport News Shipbuilding & Dry Dock Co., 571 F.2d 1283, 1286 (4th Cir. 1978). To grant a motion to enforce a settlement agreement, "a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Smith-Phifer v. City of Charlotte, 118 F.4th 598, 610 (4th Cir. 2024) (quotation omitted); Hensley, 277 F.3d at 540–41.

In their pro se motion for reconsideration, the Mitchell brothers argue that the court should refuse to enforce the MOU because counsel for defendants allegedly took advantage of the "elderly" Mitchell brothers by conducting mediation for "over 10 hours until [defendants] depleted the [Mitchell brother's] mental health." [D.E. 93] 3. The Mitchell brothers also rehash their arguments about defendants' alleged conduct in this case and the Mitchell brothers' alleged injuries. See id. at 3–5. In their memorandum of law, the Mitchell brothers argue without any evidentiary support that the MOU cannot be considered a complete agreement between the parties. See [D.E. 99] 4–5. The Mitchell brothers also argue that the MOU "is void as a matter of law" because the Mitchell brothers' wives, who are also plaintiffs, did not sign the document, and the Mitchell brothers lacked the authority to sign on the MOU on their wives' behalf. See id. at 5–6.

"Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." Hensley, 277 F.3d at 540 (cleaned up). "Defeated expectations do not, therefore, entitle the litigant to repudiate commitments made to opposing

5

parties or to the court." Petty, 849 F.2d at 133. The Mitchell brothers voluntarily participated in mediation with the defendants, signed the MOU, informed the court that the parties had reached a settlement agreement, and voluntarily dismissed with prejudice their remaining claims. Now, two years later, the Mitchell brothers ask the court to refuse to enforce the MOU. The Mitchell brothers' second thoughts do not invalidate the terms of an otherwise valid settlement agreement. See Rogers v. Cherokee Creek Boys Sch., Inc., No. C.A. 8:07-1453, 2008 WL 4065696, at *2 (D.S.C. Aug. 26, 2008) (unpublished). Indeed, "[u]nless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement." Petty, 849 F.2d at 133 (citation omitted).

Defendants ask this court to enforce the MOU. See [D.E. 112] 3. The court has reviewed the parties' arguments, the record, and the MOU. There is no dispute that the parties signed the MOU. Thus, the court considers whether the MOU constitutes a complete agreement, and whether the MOU's terms and conditions are clear. See Smith-Phifer, 118 F.4th at 610; Hensley, 277 F.3d at 540–41. After reviewing the MOU, the court finds that the MOU constitutes a complete agreement, and its terms and conditions are clearly defined. See [D.E. 99-1] 1–2; Smith-Phifer, 118 F.4th at 610; Hensley, 277 F.3d at 540–41. Indeed, the Mitchell brothers demonstrated that they understood the terms of the MOU when they voluntarily dismissed with prejudice their remaining claims against GrainComm. See [D.E. 89]. As for the Mitchell brothers' arguments concerning duress, plaintiffs fail to cite any legal authorities to support their contention that the length of the mediation and the Mitchell brothers' age require the court to disregard the MOU. To the contrary, the court credits Horn's report that describes the congenial and professional efforts of counsel in resolving this case. See [D.E. 88].

6

As for the Mitchell brothers' argument that the MOU is invalid because their wives did not sign the document, the Mitchell brothers' claims were the only existing claims at the time of the mediation. See [D.E. 101]; cf. [D.E. 82, 84, 89]. Thus, the Mitchell brothers possessed the sole authority to resolve the matter in mediation, which they did when they signed the MOU, notified the court that they had settled the case, and voluntarily dismissed their remaining claims against GrainComm. Thus, the court denies plaintiffs' motion for reconsideration, grants defendants' motion to enforce the settlement agreement that plaintiffs signed, and denies as moot defendants' motion to strike plaintiffs' memorandum in support.

III.

In sum, the court GRANTS defendants' motion to enforce the settlement agreement (i.e., the MOU) that plaintiffs signed [D.E. 103]. The court ORDERS that GSA may file in the public records this order, the utility easement that GSA submitted with its motion to enforce the settlement agreement (including the exhibits), and the withdrawal/termination of the 2008 affidavit. Defendants SHALL make any payments due under the MOU by July 31, 2025. The court DISMISSES WITH PREJUDICE this action.

SO ORDERED. This 21 day of July, 2025.

JAMES C. DEVER III
United States District Judge